IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JAMES CHURCH, | CASE NO. 3:25-cv-390 |
| Plaintiff, | DISTRICT JUDGE JEFFREY J. HELMICK |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Michael Church filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court vacate and remand the Commissioner's decision.

**Procedural history**

In June and August 2022, Church filed applications for disability insurance benefits and supplemental security income, respectively, alleging a

disability onset date of December 28, 2021.[1] Tr. 252, 255, 262. In his applications, Church claimed disability due to depression; bipolar disorder; anxiety; back disorders, including cervical spine osteoporosis, status-post fusion, and cervical and lumbar spine degenerative disc disease; arthritis; and irritable bowel syndrome. Tr. 284. The Social Security Administration denied Church's applications and his motions for reconsideration. Tr. 88, 99, 110, 120. Church then requested a hearing before an Administrative Law Judge (ALJ). Tr. 208.

In October 2023, an ALJ held a hearing, during which Church and a vocational expert testified. Tr. 41–87. In February 2024, the ALJ issued a written decision finding that Church was not disabled. Tr. 17–35. The ALJ's decision became final on January 16, 2025, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Church filed this action on February 27, 2025. Doc. 1. He asserts the following assignment of error, which is reproduced as written:

> Whether the ALJ erred ALJ erred in her evaluation of the medical opinions and prior administrative medical findings and erred in her evaluation of the prior ALJ's decision.

Doc. 8, at 1.

---

[1]    "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

**Evidence**

*Personal and vocational evidence*

Church was 50 years old on his alleged disability onset date. Tr. 33. He completed two years of college and used to work in sales and as a vehicle assembler. Tr. 76, 285.

*Medical evidence[2]*

Records show that Church sought treatment from Coleman Psychiatry in December 2020. *See* Tr. 567–69 (August 2022 Coleman Psychiatry note summarizing past visits beginning with December 2020). This summary shows that in December 2020, Church was taking Cymbalta and reported a decrease in his mental health symptoms, but continued to experience periods of depression and "high anxiety." Tr. 569. The provider increased Church's Cymbalta dosage. Tr. 569.

In February 2021, Church followed up at Coleman Psychiatry with Nurse Practitioner Steven Mates. Tr. 727, 733. Church reported "ups and downs." Tr. 727. He had days where his mind raced and he would get overwhelmed, and he would have to "lie down and let it pass." Tr. 727. On other days, he had "high energy," which caused him to overextend physically and aggravate his chronic pain issues, leading to depression. Tr. 727. Church reported that his medications helped "because the extremes [we]ren't too bad

---

[2]     Church only challenges the ALJ's evaluation of his mental impairments, so only this evidence is reproduced here.

anymore." Tr. 727. He carried diagnoses of bipolar disorder with moderate-to-severe "anxious distress" and generalized anxiety disorder. Tr. 731. Church's medications included Buspar for anxiety, Elavil for sleep, Tegretol for mood regulation, and Cymbalta for depression. Tr. 732.

In April 2021, Church told Mates that his wife had left him. Tr. 734. Church reporting doing "ok" and said that he had met someone else who seemed to understand him better. Tr. 734. Church said that he had racing thoughts, which made it difficult to organize his thoughts and to speak. Tr. 734. He also reported a poor memory. Tr. 734. Mates prescribed Trileptal to replace Tegretol. Tr. 739.

In June 2021, Church had a counseling session at Coleman Counseling with Licensed Social Worker Drew Jennings. Tr. 658. Church reported "some thought blocking and extreme irritation." Tr. 658. Jennings observed that Church was cooperative, pleasant, and retained clear speech throughout the session. Tr. 658.

In September 2021, Church told Mates that his mood was stable most of the time. Tr. 755. He "still had moments where he [wa]s racing" and he said that "he has always been paranoid," which negatively affected his personal relationships. Tr. 755. Mates prescribed Abilify for paranoia. Tr. 760. Later that month, Church saw Jennings for counseling. Tr. 670. Jennings wrote that Church was cooperative, exhibited clear speech, and maintained clear eye contact during the session. Tr. 670. Jennings commented that Church was

4

"often combative" and at times during the session "resistant to treatment recommendations." Tr. 670.

The next month, Church reported that Abilify was helping with paranoia. Tr. 762. His mind "still race[d] but [was] overall doing well." Tr. 762. Church "just need[ed] [medication] refills" that day, Tr. 762, which Mates provided, Tr. 767.

In December 2021, Church had a visit with Mates and said that he was not sleeping well, getting two-to-three hours of sleep at night. Tr. 770. This left him feeling groggy and tired during the day. Tr. 770. Church said that his mood was stable and his depression and anxiety were "doing ok." Tr. 770. Mates increased Church's Elavil dosage to help with sleep. Tr. 775. That day, Church had a counseling session with Jennings. Tr. 678. Jennings described Church as cooperative and pleasant. Tr. 678. Church had normal speech but was "often tangential during the session" when discussing his symptoms. Tr. 678. He described racing thoughts and difficulty completing tasks. Tr. 678–79. Church reported that his mood symptoms had worsened since his then-recent Covid-19 illness and resultant isolation. Tr. 678–79.

About a week later, Church saw Licensed Social Worker Daphne Lindo at Health Partners of Western Ohio. Tr. 512. He reported "improvement in ruminative anxiety." Tr. 512. Church said that he was "actively seeking work" and felt frustrated that he could not do the things he used to do. Tr. 513.

In early April 2022, Church saw Jennings for a counseling session. Tr. 684. Jennings observed Church to be cooperative and pleasant, with clear speech and logical thoughts. Tr. 684. Church told Jennings that his "anxious 'racing thoughts' continue to be his primary mood symptom." Tr. 684. He reported decreased sociability. Tr. 684. He said that he felt anxious about his disability application being rejected, but remained optimistic "given the level of support he receive[d] from his girlfriend, kids, and family." Tr. 684. The next day, Church saw Mates. Tr. 784. Church said that he was happy that he no longer had racing thoughts. Tr. 784. His sleep was "ok" and his anxiety was "a little high sometimes," but he managed it "ok" and was satisfied with his current medication regime. Tr. 784.

About two weeks later, Church underwent a diagnostic assessment with Jennings. Tr. 707. Church reported severe anxiety for three to four years, which had developed into racing thoughts. Tr. 707. His racing thoughts prevented him from working and interacting with others outside his home. Tr. 707. Jennings described Church as pleasant and cooperative, albeit "often tangential and difficult to follow." Tr. 707. Church reported moderately severe limitations in the following activities of daily living: communication; problem solving; leisure; and coping skills. Tr. 714–15. He indicated a severe limitation with productivity. Tr. 715. On exam, Church had cooperative and agitated behavior, clear speech, tangential and racing thoughts, preoccupied thought content, fair to poor insight and judgment, and impaired attention and

6

concentration. Tr. 716–17. Jennings wrote that Church was difficult to redirect, and he often asked Jennings to repeat the questions, indicating that he had issues with memory. Tr. 716–17.

In June 2022, Church followed up with Mates and said that his mood was "up and down," "sometimes stable," and "much better than when he first started at Coleman." Tr. 792. Church was "struggling to decide whether to try and work again or stick with the plan to get [disability.]" Tr. 792. He said that he would likely pursue disability because his physical conditions had not improved. Tr. 792.

In July 2022, Church saw Lindo at Health Partners of Western Ohio. Tr. 503. Church reported that he was taking Abilify, which reduced his paranoia and some of his racing thoughts. Tr. 503. He also said that he still had difficulty sleeping and low energy. Tr. 503. Lindo assessed Church with bipolar I disorder, "most recent episode, mixed - moderate." Tr. 504.

In early August 2022, Mates completed a checklist form cataloging Church's work-related mental limitations. Tr. 490–91. Mates listed Church's diagnosis as bipolar disorder, which caused paranoia, mood fluctuations, and "some anxiety." Tr. 490. Mates opined that due to his impairment, Church would have no more than mild difficulties in understanding, remembering or applying information, interacting with others, and adapting or managing himself. Tr. 490. He indicated that Church would have moderate difficulties in maintaining concentration, persistence, or pace. Tr. 490. Church would be

absent from work two days per month on average. Tr. 490. Mates indicated that Church would have mild limitations remembering locations and work-like procedures and no limitations carrying out very short and simple instructions. Tr. 491. Church would be moderately limited in his "ability to complete a[n] 8-hour work-day and workweek without interruption from psychologically based symptoms and to perform a consistent pace without an unreasonable number and length of rest periods." Tr. 491. He would have mild limitations getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and mild limitations responding appropriately to changes in the work setting. Tr. 491. Mates wrote that Church had "[n]o medication adjustments" for six months, since February 2022. Tr. 491.

A week later, Church told Mates that he hadn't been depressed "too much" but that his mood "still [went] up and down." Tr. 567. Mates commented that Church was "agreeable now to increase Abilify" to improve mood regulation. Tr. 567. Church said that his bigger problem was "memory and task completion." Tr. 567. On exam, Church had normal speech, logical thought process, racing thoughts, and unremarkable thought content. Tr. 568, 570. After this visit, a nurse called Church back to discuss his medications. Tr. 540. The nurse indicated that Church had cooperative behavior, clear speech, logical thought process, and unremarkable thought content. Tr. 540–41.

In October 2022, Church saw Mates and reported that his mood was "still up and down," but "tolerable." Tr. 575. He had some social anxiety when

he went out. 575. In December 2022, Church told Mates that he was "doing ok"; he had good days and bad days but overall felt that his mediations "ke[pt] him from the extremes." Tr. 583. Mates continued Church's medications. Tr. 588.

In February 2023, Church saw Lindo and advised that "due to counselor turnover," he had not had counseling for about six months. Tr. 834. Church reported anxiety, depression, sleep disturbances, and a fair energy level. Tr. 834. He said that his mood had slightly improved. Tr. 834.

In August 2023, Church told Lindo that he was "doing better on meds" that Mates prescribed. Tr. 845, 849. Church reported decreased paranoia, improved ability to socialize, less rumination, and improved sleep. Tr. 845. He "was in better spirits" and his relationship with his girlfriend had improved. Tr. 845.

*State agency opinions.*[3]

In October 2022, Karla Delcour, Ph.D., reviewed Church's record. Tr.

---

[3]  When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

90–91. Regarding Church's mental residual functional capacity (RFC),[4] Dr. Delcour adopted the RFC assessment of a different ALJ who had evaluated Church's prior disability application. Tr. 96. That RFC assessment limited Church to "simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts." Tr. 91. Church could only make "work related decisions, with few if any work place changes." Tr. 91. He could have occasional interaction with the general public, coworkers, and supervisors. Tr. 91. In March 2023, Alvin Smith Ph.D., agreed with Dr. Delcour's assessment. Tr. 112, 117.

*Hearing testimony*

Church, who was represented by counsel, testified at the telephonic administrative hearing held in October 2023. Regarding his mental health issues, Church stated that his worst problem was his racing thoughts and anxiety. Tr. 51. At times, being around people was "unbearable." Tr. 51. Church takes medication for depression, anxiety, bipolar disorder, and paranoia. Tr. 52. He feels like he doesn't want to leave the house. Tr. 52. He takes his dog for short walks. Tr. 53.

The ALJ discussed with the vocational expert Church's past work as an outside sales representative, service manager, motor vehicle assembler, and

---

[4]    An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

appliance salesperson. Tr. 76. The ALJ asked the vocational expert to determine whether a hypothetical individual such as Church could perform Church's past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 76–78. The vocational expert answered that such an individual could not perform Church's past work, but could perform the following jobs: garment sorter, assembler, and bagger. Tr. 77–78.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2.  The claimant has not engaged in substantial gainful activity since December 28, 2021, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3.  The claimant has the following severe impairments: osteoarthritis; lumbar facet arthropathy; cervicalgia; bipolar depression; and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),  404.1525,  404.1526,  416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)  and  416.967(b)  except:  occasional overhead  reaching,  pushing  or  pulling,  frequent

11

handling, fingering and feeling, no hand or foot controls, no climbing ladders, ropes and scaffolds and engaging in the remaining postural activities on an occasional basis in environments with no assembly line production dictated by an external source, no dangerous machinery, no unprotected elevations, no extreme temperatures and no commercial driving with frequent interaction with the public, co-workers and supervisors. In addition, the claimant can understand, remember and carry out simple instructions that require little or no judgment and a short period of time to learn.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was … 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 28, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 20–34.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.  Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.  Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work

> experience? If so, the claimant is not disabled.
> If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### Standard of review

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by

14

substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1.     The ALJ did not run afoul of the rule in Earley*

Church argues that the ALJ applied the incorrect standard of review to another ALJ's decision on Church's prior disability application. Doc. 8, at 10–13.

In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit said that certain previous cases "clearly demonstrate that the principles of res judicata can be applied against the Commissioner. When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination

absent changed circumstances." *Id*. at 842. The Social Security Administration adopted this ruling as Acquiescence Ruling 98-4(6). *See* SSAR 98-4(6), 63 FR 29771-01, 1998 WL 274052 (June 1, 1998).

But in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), the Sixth Circuit said that "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only 'foreclose[s] successive litigation of the very same claim.'" *Id*. at 933 ("a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994."). The Social Security Administration rescinded Acquiescence Ruling 98-4(6) and replaced it with Acquiescence Ruling 24-1(6), effective December 2, 2024, to reflect the Sixth Circuit's *Earley* decision. *See* SSAR 24-1(6), 89 FR 92992, 2024 WL 5256889 (Nov. 25, 2024).

Church's claim covers December 28, 2021 to February 26, 2024. Tr. 34–45. This is a distinct period of time from that of Church's previous claim, which covered the time up to February 2, 2021. Tr. 17. So Church's current application is entitled to a "fresh look." *See Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662, at *4 (6th Cir. Mar. 20, 2024) (quoting *Earley*, 893 F.3d at 931).

At the outset of her decision, the ALJ stated that she was "bound by the previous findings and determinations, … unless there is new and material evidence or a showing of 'changed circumstances' relating to a determination

of the present claim in accordance with Acquiescence Rulings 98-3(6) and 98-4(6)." Tr. 18. At each step of the sequential evaluation, the ALJ evaluated the record, found that it showed that Church's condition had changed since his prior disability application, and expressly stated that "AR 98-4(6) does not apply to this finding." Tr. 20 (step two), Tr. 21 (step three), Tr. 23 (RFC determination). So the ALJ evaluated the evidence and gave it a "fresh look," thereby conforming to the ruling in *Earley*. *See Dennis D.*, 2024 WL 1193662, at *4–6 (finding that despite the ALJ's "inaccurate recitation of the legal effect of the prior determination" that he was bound by the prior ALJ's decision, the ALJ conducted his own review of the evidence and, therefore, conformed to the rule in *Earley*).

Church complains that the Appeals Council "should have reviewed the ALJ's decision and determined whether the ALJ complied with AR 24-1(6)," which was in effect when the Appeals Council considered Church's request for review. Doc. 8, at 11–12. But this Court reviews the ALJ's decision, not the Appeals Council's decision to deny review.[5] *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

Finally, Church points out that the state agency reviewers adopted the prior ALJ's RFC. Doc. 8, at 11; Doc. 11, at 1; *see* Tr. 91, 97, 101–02, 107. And

---

[5] Also, the Commissioner points out that the Agency's "Hearings, Appeals, and Litigation Law Manual (HALLEX) …. makes clear [that] the Appeals Council 'will not grant review of a properly issued hearing decision dated prior to December 2, 2024 solely to apply the *Earley* AR.'" Doc. 10, at 7 (quoting HALLEX § 01540.075).

because the ALJ "credited" these opinions, Church claims, the ALJ erred. *Id.* But the ALJ acknowledged that the state agency reviewers adopted the prior ALJ's RFC. Tr. 31. The ALJ then recited every limitation the reviewers adopted; discussed evidence during the relevant period; explained why she found portions of the reviewers' opinions to be not persuasive, somewhat persuasive, or generally persuasive; and stated why she modified the reviewers' assessed limitations to fit the RFC that she assessed. Tr. 32. In other words, the ALJ gave a "fresh look" at the state agency reviewers' opinions and the evidence, explained her findings, and crafted a different RFC. This was not error. *See also Dennis D.*, 2024 WL 1193662, at *6 (an ALJ does not err even when he or she uses the prior ALJ's RFC as a starting point for a new RFC assessment).

2.      *The ALJ erred when evaluating Nurse Mates's opinion*

Church argues that the ALJ erred when evaluating Nurse Mates's opinion. Doc. 8, at 13–21.

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source

18

are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). The Commissioner is not required to discuss the remaining factors. 20 C.F.R. § 416.920c(b)(2)).

The ALJ discussed and evaluated Mates's opinion as follows:

> I considered the opinion of Steven Mates, psychiatric mental health board certified nurse practitioner (PMHNP-BC), the claimant's mental health provider (Exhibit B2F/1-2). Mr. Mates stated the claimant had moderate difficulties in maintaining concentration, persistence or pace while none to mild difficulties understanding, remembering or applying information, interacting with others and adapting or managing oneself, but he would be absent from work two days a month on average (Exhibit B2F/1). Mr. Mates also provided the claimant would have moderate limitations in his ability to complete an eight-hour workday and workweek without interruptions from psychologically based symptoms and to perform a consistent pace without an unreasonable number and length of rest periods while he would have mild limitations in his ability to remember locations and work-like procedures, get along with coworkers or peers without distracting them or exhibiting behavioral extremes and responding appropriately to change in the work setting and no limitation carrying out very short and simple instructions (Exhibit B2F/2).
>
> I find [the] opinion by Mr. Mates is somewhat persuasive. The opinion by Mr. Mates that the

claimant would be absent from work two days a month on average does not appear internally consistent with the other opinions by Mr. Mates that the claimant had only mild to moderate limitations in the claimant's work abilities (Exhibit B2F/1-2). Mr. Mates also noted that the claimant had no medication adjustments for six months when contemplating the opinion, which appears to support the opinions by Mr. Mates that the claimant had simply mild to moderate limitations in the areas of completing an eight-hour workday and workweek, remember locations and work-like procedures, maintaining concentration, persistence or pace, understanding, remembering or applying information, interacting with others, adapting or managing oneself and responding to change in the work setting (Exhibit B2F/2). The mild to moderate limitations contemplated in those areas also appear consistent with the claimant's own statements to his treating providers that his mental health symptoms were better since attending specialized mental health treatment and/or his symptoms were tolerable (Exhibits B4F/11, 14, B5F/36, 44, B6F/182, 189, 197 and B7F/2). As such, I find the opinion regarding absenteeism by Mr. Mates is not persuasive, but the rest of the opinion is persuasive and those parts were considered in determining the residual functional capacity herein.

Tr. 31.

Church first asserts that the ALJ "failed to compare [] Mates' opinion to the mental status examinations in the record" and to the state agency reviewers' opinions. Doc. 8, at 13, 20. But Church doesn't identify legal authority requiring an ALJ to articulate a comparison of an opinion to a particular piece of evidence in the record. *See also Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *6 (6th Cir. June 12, 2024) ("Sallaz

identifies no authority limiting ALJs to relying on a rebuttal medical opinion when [evaluating the persuasiveness of opinion evidence]").

Church's main argument fares better. Church contends that, contrary to the ALJ's statement, Mates's finding that Church would be absent two days a month was not inconsistent with Mates's finding that Church had "moderate limitations in his ability to complete an eight-hour workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."[6] Doc. 8, at 15; Doc. 11, at 2–3. Church points out that the form Mates completed invited him to select how many days a month Church would be absent from work, and provided six options: "none," "one," "two," "three," "four," and "four or more." Tr. 490; Doc. 11, at 2–3. Mates selected "two." Tr. 490. This option straddles the lower end of the halfway point between *none* and *four or more*— the middle, so to speak. And Mates found that Church had "moderate" limitations "complet[ing] an eight-hour workday and workweek without interruptions from psychologically based symptoms," Tr. 491, a limitation that the ALJ found persuasive, Tr. 31. The form doesn't define *moderate*, but this word is generally accepted to mean *average*. *See Moderate*, Merriam-Webster

---

[6]    I note that the form asked Mates to assess Church's "ability to complete a[n] 8-hour work-day and workweek without interruptions from psychologically based symptoms *and* to perform a consistent pace without an unreasonable number and length of rest periods." Tr. 491(emphasis added). This is a compound sentence. It's not therefore clear whether Mates was offering an opinion on the first part of this sentence, the second part, or both. The ALJ apparently assumed it was both. Tr. 31.

Online Dictionary, https://www.merriam-webster.com/dictionary/moderate (last visited Aug. 20, 2025). So the ALJ's finding that Mates's absent-two-days-a-month opinion was internally inconsistent with Mates's opinion that Church had *moderate* limitations "complet[ing] an eight-hour workday and workweek without interruptions from psychologically based symptoms," Tr. 31, is not supported.[7] Indeed, it is the ALJ's explanation that is internally inconsistent.

I therefore recommend that the ALJ's decision be remanded.[8] *See Jordan*, 548 F.3d at 422 (remand is appropriate when the ALJ's "findings of fact [are] unsupported by substantial evidence in the record").

### Conclusion

For the reasons explained above, I recommend that the Court vacate and remand the Commissioner's decision for proceedings consistent with this opinion.

Dated: August 20, 2025

/s/ *James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

---

[7]    The Commissioner offers an alternative explanation for rejecting Mates's absenteeism opinion. Doc. 10, at 9. But the ALJ did not provide this explanation, so it can't serve as a basis to affirm the ALJ's decision. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018) ("[A]n agency's actions must be upheld, if at all, on the basis articulated by the agency itself, and not based on appellate counsel's post hoc rationalization[s]") (internal quotation marks and citations omitted).

[8]    Because I recommend the Court find that remand is appropriate on this issue, I don't consider Church's final argument that the ALJ erred when evaluating the state agency reviewers' opinions, Doc. 8, at 21–25.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).